UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

PELICAN EQUITY, LLC,

                        Plaintiff,                      09 Civ. 5927 (NRB)

    -against-

ROBERT V. BRAZELL, STEPHEN L. NORRIS,
TALOS PARTNERS, LLC, RAMA RAMACHANDRAN,
DARL McBRIDE, and BRYAN CAVE LLP,

                        Defendants.
_____


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DARL MCBRIDE'S MOTION TO DISMISS
<u>COMPLAINT FOR LACK OF PERSONAL JURISDICTION</u>**


                                              ALTMAN & COMPANY P.C.
                                              260 Madison Avenue, 22nd Floor
                                              New York, New York 10016
                                              (212) 683-7600

                                              Attorneys for Plaintiff Pelican Equity, LLC

## **TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.   THE COURT HAS JURISDICTION OVER
     DARL MCBRIDE PURSUANT TO CPLR 302(A)(2). . . . . . . . 6

     A.   This Court Has Jurisdiction. . . . . . . . . . . 6

     B.   Mr. McBride's Jurisdictional
          Arguments are Meritless. . . . . . . . . . . . . 9

II.  THE COURT ALSO HAS JURISDICTION OVER
     DARL MCBRIDE PURSUANT TO CPLR 302(A)(1). . . . . . . 11

III. THE ASSERTION OF JURISDICTION OVER MR. MCBRIDE
     SATISFIES THE REQUIREMENTS OF DUE PROCESS. . . . . . 12

IV.  MR. MCBRIDE'S IMPERTINENT ALLEGATIONS
     AGAINST MARK ROBBINS SHOULD BE DISREGARDED. . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . 14

# **TABLE OF AUTHORITIES**

**Cases**

Allstate Life Ins. Co. v. Linter Group Ltd., 782 F. Supp. 215 (S.D.N.Y. 1992) . . . . . . 7

Andre Emmerich Gallery, Inc. v. Segre, 1997 WL 672009 (S.D.N.Y. 1997) . . . . . . . .12

Burger King v. Rudzewicz, 471 U.S. 462, 105 S. Ct. 2174 (1985) . . . . . . . . . . . . . . . 12

Chrysler Capital Corp. v. Century Power Corp., 778 F. Supp. 1260 (S.D.N.Y. 1991) . 6

Cleft of the Rock Foundation v. Wilson, 992 F. Supp. 574 (E.D.N.Y. 1998) . . . . . . . 7, 8, 9, 12

CutCo Indus, Inc. v. Naughton, 806 F.2d 361 (2d Cir. 1986) . . . . . . . . . . . . . . . . . . . 6

Dixon v. Mack, 507 F. Supp. 345 (S.D.N.Y. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

En Vogue v. UK Optical, 843 F.Supp. 838 (E.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . 6

First Chicago Int'l v. United Exchange Co., Ltd., 836 F.2d 1375 (D.C. Cir. 1988) . . 10

Grove Press, Inc. v. Angleton, 649 F.2d 121 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . 10

Keeton v. Hustler Magazine, 465 U.S. 770, 104 S. Ct. 1473 (1984) . . . . . . . . . . . . . 12

Kravetz v. Brukenfeld, 591 F. Supp. 1383 (S.D.N.Y. 1984) . . . . . . . . . . . . . . . . . . . . 8

Louros v. Cyr, 175 F. Supp.2d 497 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8

Lunera Lighting, Inc. v. Nexus Light Drive, Inc.,
  2009 WL 2824744 (N.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

Second Amendment Foundation v. U.S. Conference of Mayors,
  274 F.3d 521 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Simon v. Philip Morris, Inc., 86 F. Supp.2d 95 (E.D.N.Y. 2000) . . . . . . . . . . . . . . . 6, 7,

777388 Ontario Limited v. Lencore Acoustics Corp., 142 F. Supp.2d
  309 (E.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 12

**Statutes and Rules**

Fed.R.Civ.P. 8(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

CPLR 302 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

CPLR 302(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

CPLR 302(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**Treatises**

2A J. Moore & J. Lucas, Moore's Federal Practice (1984) . . . . . . . . . . . . . . . . . . . . . . 8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

PELICAN EQUITY, LLC,

                                Plaintiff,                        09 Civ. 5927 (NRB)

      -against-

ROBERT V. BRAZELL, STEPHEN L. NORRIS,
TALOS PARTNERS, LLC, RAMA RAMACHANDRAN,
DARL McBRIDE, and BRYAN CAVE LLP,

                                Defendants.
_____

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DARL MCBRIDE'S MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION

### INTRODUCTION

Plaintiff Pelican Equity, LLC ("Pelican") submits this memorandum in opposition to the motion of defendant Darl McBride to dismiss this action as against him for lack of personal jurisdiction over him. Mr. McBride's motion should be denied because Pelican has adequately alleged that he joined in a conspiracy to destroy Pelican's predecessor in interest, American Institutional Partners LLC ("AIP"), and steal its business through unlawful conduct with knowledge of his co-conspirators' tortious acts in New York. Pelican alleges the individual defendants' agreement to that plan while still affiliated with AIP, their establishment of a competing business, defendant Talos Partners, LLC, in New York, and Mr. McBride's active participation in the planning and execution of their scheme. The defendants, in furtherance of their plan, are alleged to have committed the overt acts of misappropriating and using the

confidential information on which AIP's stock loan business was based, forming and operating a competing business in New York while still affiliated with AIP, corrupting AIP's employees and attorneys, stealing a copy of its website, and, through Mr. McBride, conducting an internet smear campaign to damage AIP and its founder as their conspiracy came out into the open. Pelican also alleges that Mr. McBride expected to earn money from the defendants' new business in New York, that he was aware of and helped to plan unlawful activity committed in this state, and that that activity was accordingly conducted in part on his behalf and at his behest. Those allegations are more than enough to sustain the assertion of personal jurisdiction over Mr. McBride at this stage of the proceedings.

Mr. McBride fails to address Pelican's relevant allegations and focuses instead on jurisdictional issues pertinent to defamation suits, irrelevant and misleading assertions regarding his purported lack of personal contact with New York, and Mark Robbins' unrelated alleged legal problems. His contention that his defamatory statements do not support long-arm jurisdiction is pointless because the Court's jurisdiction over him is not premised on any defamation claim against him. Pelican has in fact asserted no such claim. Mr. McBride's argument regarding the assertion of jurisdiction over him under New York law due to his participation in a conspiracy, which he knew from Pelican's September 10, 2009 letter to the Court to be the alleged basis of jurisdiction over him, occupies a grand total of two pages. That cursory argument is largely conclusory and supported only by a pitiful smattering of easily distinguishable case citations. In sum, Mr. McBride has effectively left the field to Pelican and the Court, as nothing he has stated in his papers provides a legitimate reason to dismiss him from this action.

## BACKGROUND

In the Complaint, Pelican alleges that it is the successor in interest to AIP, a company that, largely through its principal officer, Mark Robbins, developed a novel stock loan program. (Complaint ¶¶ 7, 17-19)  The AIP stock loan program, the structure of the transactions effected in it, the model contracts and other documents created for it, and related agreements and discussions with financial institutions and others, allegedly constitute valuable trade secrets. (Id. ¶ 19) According to Pelican, beginning in 2007 Darl McBride expressed an interest in joining AIP and becoming a "partner" in it. (¶ 20) He moved into AIP's offices and worked with and supervised AIP salespeople and other employees who conducted AIP's stock loan business. When an AIP controller departed, Mr. McBride assumed responsibilities for the company's finances. (Id.) He is alleged to have had access to virtually all of AIP's files and to have learned the details of its stock lending business, including its confidential information, which he agreed to keep confidential. (Id.)

Pelican also alleges that defendant Robert Brazell began to work at AIP in late 2008, acted as an officer of that company, obtained access to its confidential information, and held himself out as "co-chairman" of AIP. (Complaint at ¶¶ 8, 23-29) Stephen Norris, who was working on AIP's stock loan program and had a consulting agreement with the company, began working with Mr. Brazell and AIP employee Rama full time on the stock loan program in November 2008. (Id. ¶¶ 29-30) As they planned to locate the headquarters of the stock lending business in New York City, they secured space on Madison Avenue, ostensibly for AIP, and moved into that space. (¶¶ 29-31) Before they moved into the Madison Avenue offices, those defendants used space at Bryan Cave's New York offices. (Id. at ¶ 36)

Pelican alleges that in December 2008 or early January 2009, while still working for AIP, defendants Brazell and Norris agreed to steal AIP's business, destroy AIP, and move forward with its stock loan product but without Robbins or AIP. (Complaint ¶ 37) Mr. McBride soon joined in their agreement. (Id. and also ¶ 80) Mr. Brazell allegedly corrupted Bryan Cave and Mr. Rama and other AIP employees. (Id. at ¶¶ 3, 37, 38, 68) Mr. Rama, like the others, worked for the conspiracy while still employed at AIP. According to Pelican, the conspirators formed a competing business (Talos Partners, LLC) in New York, misappropriated and used AIP's form agreements, other confidential information, and website, sabotaged AIP's computer system, usurped AIP opportunities, induced a "wholesale abandonment" of AIP, and competed with AIP in the stock loan business both before and after the conspirators severed their relationships with the company. (Id. at ¶¶ 37, 39, 42, 44-45, 48, 64, 68, and 80)

Pelican alleges that Darl McBride participated fully with the other conspirators in the planning of their scheme to destroy AIP and steal its business. (Complaint at ¶ 51) He consulted with them regarding the execution of that scheme and shared with them the confidential information to which he had access at AIP. It also alleges that Mr. McBride engaged in a campaign to disparage Mark Robbins and AIP, largely through internet postings and through a website, www.skylinecowboy.com, that Mr. McBride established for exactly that purpose. (Id. at ¶¶ 49-50) Beginning on or before February 11, 2009, shortly after the conspirators' mutiny came into the open, Mr. McBride, in consultation with Robert Brazell, relentlessly disparaged Mr. Robbins and his (AIP's) stock loan business in the hope of eliminating any chance that AIP might survive the conspirators' plot and keep any of the business that Talos was stealing. (Id. at ¶ 51) Mr. McBride of course did not perform those tasks solely for his own entertainment. He

was motivated to assist in the conspiracy because he hoped to share in the tremendous profits that it would generate and apparently has generated. (Id. at ¶¶ 4, 48, 50)

In consequence of the defendants' misconduct, Pelican alleges ten claims for relief, including violation of the Computer Fraud and Abuse Act, misappropriation of trade secrets, breach of fiduciary duties and duty of loyalty, tortious interference with fiduciary duties, duty of loyalty, and business relations, unfair competition, and fraud. (Complaint at pp. 23-36) It also alleges conspiracy to compete unfairly, tortiously interfere with AIP's business relations, and to commit breaches of fiduciary duties and the duty of loyalty. (Id. at ¶¶ 79-81). In that regard, Pelican alleges, inter alia, that:

> Defendants Brazell, Norris, McBride, and Rama agreed to establish a business to compete with AIP while they were still affiliated with that company and in violation of their duties to it, to compete with AIP through use of its Confidential Business Information, and to destroy AIP's business. They in fact did steal AIP's confidential information, used it to establish their competing business, usurped its opportunities, engaged in a smear campaign against AIP and its principal officer, and thereby did effectively destroy AIP's business as they intended. At the most critical stages of the conspiracy, from its inception in December 2008 and January 2009, its leader, Brazell, was located primarily in New York and operated primarily from Bryan Cave's New York offices and from the offices at 540 Madison Avenue. As known to all of the conspirators, a substantial portion of the defendants' wrongful acts occurred there, including their use of AIP's attorneys and obtaining of confidential AIP information from them, some of their thefts of information from AIP, the establishment of their competing business, and most of their competition with AIP through operation of that business. Each of the conspirators was aware of those main elements of the conspiracy, including the acts committed in New York, and each hoped to benefit from the conspiracy through participation in the revenues the competing business would generate, as on information and belief they agreed among themselves.

Id. at ¶ 80.

## ARGUMENT

I.  **THE COURT HAS JURISDICTION OVER
    DARL MCBRIDE PURSUANT TO CPLR 302(A)(2).**

   A.   **This Court Has Jurisdiction.**

>   In order to defeat a motion to dismiss on the basis of personal jurisdiction, a plaintiff in New York need only make a prima facie showing of jurisdiction. See e.g., En Vogue [v. UK Optical, 843 F.Supp. 838 (E.D.N.Y. 1994)] at 842 . . . The pleadings and affidavits are construed in the light most favorable to the plaintiff, and all doubts are resolved in its favor. Id., citing CutCo Indus, Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986). Moreover, pursuant to Fed.R.Civ.P. 8(a)(1), a pleading need only contain a short and plain statement of the grounds upon which the court's jurisdiction depends. Id.

777388 Ontario Limited v. Lencore Acoustics Corp., 142 F. Supp.2d 309, 317 (E.D.N.Y. 2001).

Personal jurisdiction in federal question and diversity cases is determined by the law of the state in which the district court sits. Lunera Lighting, Inc. v. Nexus Light Drive, Inc., 2009 WL 2824744 at * 2 (N.D.N.Y. 2009); Louros v. Cyr, 175 F. Supp.2d 497, 519 (S.D.N.Y. 2001). In this case, the Court has jurisdiction over Darl McBride pursuant to CPLR 302(a)(2) and (a)(1). CPLR 302(a)(2) provides, in pertinent part, that:

>   (a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise jurisdiction over any non-domiciliary . . . who in person or through an agent:
>       (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act . . .

As the court recited in Simon v. Philip Morris, Inc., 86 F. Supp.2d 95, 119-20 (E.D.N.Y. 2000):

>   The term "agent" for purposes of CPLR 302(a)(2) has been read to include co-conspirators. [citations omitted] "It is well established that acts committed in New York by the co-conspirator of an out-of-state defendant pursuant to a conspiracy may subject the out-of-state defendant to jurisdiction under CPLR 302(a)(2)." Chrysler Capital, [778 F. Supp. 1260,] 1266 [(S.D.N.Y. 1991)] [additional citations omitted]

Accordingly, a plaintiff need not show that a defendant committed any acts in New York to obtain jurisdiction over it here. It can instead show that that defendant participated in a conspiracy in which some of the other conspirators committed tortious acts in New York. Simon v. Philip Morris, Inc., 86 F. Supp.2d at 119-20; 777388 Ontario Limited v. Lencore Acoustics Corp., 142 F. Supp.2d at 319; Cleft of the Rock Foundation v. Wilson, 992 F. Supp. 574, 581-84 (E.D.N.Y. 1998). Indeed, because a conspirator is deemed to ratify the known prior actions of all of his confederates in furtherance of the conspiracy, the New York actions of all conspirators are attributed to a new conspirator even if no conspirator engages in action in New York during the time when the new conspirator is participating in the scheme. Cleft of the Rock Foundation, 992 F. Supp. at 584; Simon v. Philip Morris, Inc., 86 F. Supp.2d at 123.

Different courts in the Second Circuit have stated slightly varying requirements for pleading jurisdiction as a result of a defendant's participation in a conspiracy. Some courts have held that the plaintiff must (1) make a prima facie factual showing of a conspiracy, (2) allege specific facts to show that the relevant defendant was a member of the conspiracy, and (3) show that a co-conspirator committed a tortious act in New York. Louros v. Cyr, 175 F. Supp.2d at 520; Allstate Life Ins. Co. v. Linter Group Ltd., 782 F. Supp. 215, 221 (S.D.N.Y. 1992). Other courts have stated that the plaintiff must allege the first two of those elements and also allege that (a) the (out-of-state) defendant was aware of the New York impact of the conspiracy, (b) the New York activity of the conspiracy was in part performed for the benefit of the defendant, and (c) the New York activities were performed at the direction or request, under the control, or on behalf, of the defendant. See 777388 Ontario Limited, 142 F. Supp.2d at 319. Pelican's allegations satisfy both tests.

Pelican has pleaded a conspiracy claim. To plead a valid cause of action for conspiracy, a plaintiff in New York must allege a "primary tort and four elements: (a) a corrupt agreement between two or more persons; (b) an overt act in furtherance of the agreement; (c) the parties' intentional participation in the furtherance of a plan or purpose; and (d) the resulting damage or injury." Louros v. Cyr, 175 F. Supp.2d at 520. See also Cleft of the Rock Foundation, 992 F. Supp. at 582. The courts have held that "great leeway should be allowed the pleader [of a conspiracy claim], since by the nature of the conspiracy, the details may not be readily known at the time of the pleading."[1] Pelican has alleged the necessary elements. It has specifically alleged that defendants McBride, Brazell, Norris, and Rama engaged in an unlawful conspiracy to destroy AIP and steal its business. Those defendants are alleged to have agreed to do those things (Complaint ¶ 37) and, inter alia, to have performed the overt acts of actually stealing and misusing AIP's confidential information, engaging in a competing business while still affiliated with AIP, stealing a copy of its website, corrupting AIP's employees and law firm, and conducting a smear campaign to damage AIP and its founder in part through use of confidential information. (Id. at ¶¶ 3, 37-39, 42, 44-45, 48, 64, and 80). Those allegations necessarily imply the individual defendants' intentional participation in that plan. The damage that AIP, and through it Pelican, suffered is self-evident and also pleaded in the Complaint (¶¶ 37, 80-81).

Pelican has also alleged facts warranting the inference that Mr. McBride was a

---

[1] 777388 Ontario Limited v. Lencore Acoustics Corp., 142 F. Supp.2d at 319 fn. 4, quoting Kravetz v. Brukenfeld, 591 F. Supp. 1383, 1387-88 (S.D.N.Y. 1984) and 2A J. Moore & J. Lucas, Moore's Federal Practice, para. 8.17[5], at 8-180 through 8-183 (1984). See also Cleft of the Rock Foundation, 992 F. Supp. at 583.

member of the conspiracy and that his conspirators committed a tortious act in New York. In addition to alleging that he joined the conspirators and assisted in the planning of the scheme, Pelican also alleges specifically that he personally conducted the conspirators' internet smear campaign. (See e.g. Complaint ¶¶ 49-51) Most of the defendants' tortious acts are alleged to have occurred in New York. (Id. at ¶¶ 36, 48, 80) And Pelican has alleged, and has alleged facts implying, that Mr. McBride was aware of the New York impact of the conspiracy, the conspiracy was conducted in part for his benefit, and New York activities were performed for his benefit or on his behalf. (See ¶¶ 50-51, 80) See Dixon v. Mack, 507 F. Supp. 345, 351-52 & fn. 7 (S.D.N.Y. 1980) (minimal requirements for latter element); Cleft of the Rock Foundation, 992 F. Supp. at 584 (ratification theory, which reflects on that element). It has not only alleged that Mr. McBride was the agent or tool of the other conspirators, as Mr. McBride contends. (See e.g. Complaint at ¶ 51)

**B.      Mr. McBride's Jurisdictional Arguments are Meritless.**

The cases that Mr. McBride cites and factual contentions he makes hardly undermine the assertion of jurisdiction over him. In Second Amendment Foundation v. U.S. Conference of Mayors, 274 F.3d 521 (D.C. Cir. 2001), the plaintiffs alleged that defendant mayors of various cities conspired to sue gun manufacturers and dealers in order to impose high legal costs on them, thereby causing them to raise prices and curtail sales. Id. at 522. The D.C. Circuit Court of Appeals found that the plaintiff had not established a conspiracy theory of jurisdiction where it "alleged no 'specific acts' showing that the mayors agreed to file suit, let alone with such a purpose" but instead simply made a conclusory allegation of "conspiracy." Id. at 524. By contrast, Pelican has specifically alleged the defendants' agreement to a clearly

unlawful scheme and Mr. McBride's participation in the conspiracy including his planning with the other defendants and his conduct of the smear campaign.

Mr. McBride's other cases are no more helpful to him. In <u>First Chicago Int'l v. United Exchange Co., Ltd.</u>, 836 F.2d 1375 (D.C. Cir. 1988), the court rejected jurisdiction over purported out-of-District conspirators because there was "no concrete evidence in the record indicating that there was a common plan . . . anywhere . . . to defraud [the plaintiff] and that [defendants] conspired and acted to further that plan." <u>Id.</u> at 1378. And in <u>Grove Press, Inc. v. Angleton</u>, 649 F.2d 121 (2d Cir. 1981), the only case in this Circuit that Mr. McBride cites in that part of his brief, the plaintiffs alleged that defendant out-of-state CIA agents participated in a scheme with unidentified New York-based CIA agents to violate their civil rights. The Court rejected the plaintiffs' theory of personal jurisdiction, remarking that plaintiffs had not shown that any part of the alleged "common action" occurred in New York or that any New York-based agents, "whoever they were," were parties to any agreement with them or acted other than as agents of the U.S. Government. <u>Id.</u> at 123

Mr. McBride's other arguments and contentions are just as clearly meritless as his case citations. Indeed, while his contradiction of Pelican's allegations could not in any event defeat jurisdiction at this stage of the case, he in fact carefully avoids squarely contradicting the relevant allegations. Mr. McBride's denials that he does business in New York or owns property here are wholly insufficient to undermine the conspiracy theory that Pelican has alleged, as are his conclusory assertions that he has not committed a tortious act here and derives no income from the state. His observation that CPLR 302 specifically excludes from its jurisdictional bases any claims based on defamation is irrelevant because Pelican does not base its jurisdiction

argument on a defamation claim. It has asserted no such claim. Mr. McBride's assertion that he never did business with Pelican is irrelevant, as Pelican is AIP's successor in interest. He does not deny that he worked for AIP.

Mr. McBride's statement that he never "met with any of the other defendants in the State of New York with respect to any of the allegations in the Complaint" (whatever that means) is at the least misleading. As Pelican alleges (Complaint ¶ 20), he did indeed meet several times with Mark Robbins, defendant Stephen Norris, and others in New York to discuss his participation in AIP and specifically its stock loan business. Mr. McBride's denials that he was "employed" by or "affiliated with" Talos or expects to share profits with it hardly negate Pelican's allegations that he participated in a conspiracy to further the business of that entity and the business of its principals and thereby expects to share in the resulting profits. His denial that he ever "created an Internet web site that was either located or hosted in the State of New York" can only be seen as a red herring in light of Pelican's claims, which do not and need not include any such allegation. Mr. McBride does not even deny that he conducted the smear campaign as part of the defendants' scheme to destroy AIP and steal its business.

## II.   THE COURT ALSO HAS JURISDICTION OVER DARL MCBRIDE PURSUANT TO CPLR 302(A)(1).

For many of the same reasons, the Court has jurisdiction over Darl McBride pursuant to CPLR 302(a)(1). That statute provides for jurisdiction over a nondomiciliary where that person, "in person or through an agent, transacts any business within the state or contracts anywhere to supply goods or services in the state." Pelican alleges that Mr. McBride's co-conspirators and their creature, Talos, conducted their stolen business in the state of New York

through their New York offices, that Talos' principal place of business is New York City, and that it earned hundreds of millions of dollars through that business. (Complaint at ¶¶ 4, 8, 10, 36, 80) Mr. McBride is therefore conducting business in New York through the conspirators and Talos and Pelican's claims arise from that activity. The satisfaction of the other elements of conspirator jurisdiction is shown above.

### III.  THE ASSERTION OF JURISDICTION OVER MR. MCBRIDE SATISFIES THE REQUIREMENTS OF DUE PROCESS.

Jurisdiction over Mr. McBride is consistent with Due Process requirements because he purposefully availed himself of the privilege of conducting activities within New York State and could reasonably expect that his involvement in a conspiracy with acts and effects in New York might cause him to be sued here. The constitutional inquiry consists of two elements: (1) whether a defendant has certain "minimum contacts" with the state such that he could be expected to be haled into court there and (2) whether litigation against the defendant in the state is "reasonable." Cleft of the Rock Foundation, 992 F. Supp. at 584-85. The first test is satisfied where a defendant joins a conspiracy that he knows to have included, or knows will include, the commission of acts in New York.[2] Mr. McBride is emphatically alleged to have done just that. (See Complaint at ¶¶ 51, 80) Where the first test is met the second, of reasonableness, is almost always also met.[3] This Court's exercise of jurisdiction is reasonable

---

[2] Id. at 585; Louros v. Cyr, 175 F. Supp.2d at 522; Andre Emmerich Gallery, Inc. v. Segre, 1997 WL 672009 at * 6 (S.D.N.Y. 1997); Dixon v. Mack, 507 F. Supp. at 352.

[3] See Burger King v. Rudzewicz, 471 U.S. 462, 477, 105 S. Ct. 2174, 2184-85 (1985); Keeton v. Hustler Magazine, 465 U.S. 770, 774, 104 S. Ct. 1473, 1478 (1984); 777338 Ontario Limited, 142 F. Supp.2d at 325 (collapsing the two inquiries into the defendant's foreseeing of consequences in the forum).

not only because Mr. McBride has minimum contacts with the forum through his co-conspirators but also because much of the conspirators' tortious conduct took place in this State and much of the injury to AIP occurred here, where AIP was establishing offices and the bulk of the defendants' misdeeds and unfair competition occurred.

### IV.   MR. MCBRIDE'S IMPERTINENT ALLEGATIONS AGAINST MARK ROBBINS SHOULD BE DISREGARDED.

Mr. McBride begins his declaration and the fact section of his brief with totally irrelevant and misleading allegations regarding an arrest warrant for Mark Robbins and Mr. McBride's alleged attendance at a meeting relating to the settlement of an unrelated case. Those assertions are of course irrelevant to his motion because they have nothing to do with the contacts between Mr. McBride and his conspiracy and the state of New York or any other facts pertinent to this Court's jurisdiction over him. They are at least two steps removed from relevance because Mr. Robbins is not a party to this action. Mr. McBride does not explain how he expects the Court to consider the warrant - a bench warrant issued because Mr. Robbins apparently did not appear for a deposition in a collection matter after entry of a default judgment - in deciding his motion. If he means to imply that that is the only reason Pelican brought the action in New York it makes no sense, not only because Mr. Robbins is not the plaintiff, because that warrant is a relatively minor matter that Mr. Robbins can easily dispose of, and because Mr. McBride has not moved to dismiss this action on the basis of the forum non conveniens doctrine, but also because the location of the defendants' competing business in this District provides ample explanation for that choice of forum. Indeed, the most obvious cause of the prominent inclusion of those allegations in Mr. McBride's papers is Mr. McBride's apparently irresistable

inclination to take the low road. It should be no surprise that the same person who waged a despicable internet campaign against a person who suffers from manic depression[4] would litigate this action in that manner.

## CONCLUSION

For the foregoing reasons, Darl McBride's motion to dismiss the first amended complaint as against him for lack of personal jurisdiction should be denied.

New York, New York
November 5, 2009

ALTMAN & COMPANY P.C.

By: /s/ *signature*
Eric Rosenberg
Steven Altman

260 Madison Avenue, 22nd Floor
New York, New York 10016
(212) 683-7600
SAltman@AltmanCo.net
Eprosen@aol.com

Attorneys for Plaintiff Pelican Equity, LLC

---

[4] The defendants are well aware of Mr. Robbins' medical history, which is why Mr. Brazell could, as he stated, hope that the internet campaign would cause Mr. Robbins to kill himself. (Complaint ¶ 50) Pelican is not presently submitting affidavits to support some of the factual contentions herein because they relate only to Mr. McBride's totally irrelevant allegations.

## DECLARATION OF SERVICE

Eric Rosenberg hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

I am an attorney licensed to practice law in the State of New York and am associated with Altman & Company PC, attorneys for plaintiff Pelican Equity. On this day, November 5, 2009, I served copies of the attached memorandum of law by filing it through the ECF system and by first class U.S. mail on the following persons:

James Ringer, Esq.
Meister Seelig & Fein LLP
Two Grand Central Tower
140 East 45th Street
19th Floor
New York, New York 10017

Moses Silverman, Esq.
Paul Weiss et al.
1285 Avenue of the Americas
New York, New York 10019

Paul Niehaus, Esq.
Niehaus LLP
1359 Broadway
Suite 2001
New York, New York 10018

_____
ERIC ROSENBERG