UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PELICAN EQUITY, LLC,

        Plaintiff,

        v.

ROBERT V. BRAZELL, STEPHEN L. NORRIS,
TALOS PARTNERS, LLC, RAMA
RAMACHANDRAN, DARL McBRIDE, and
BRYAN CAVE LLP,

        Defendants.

09 Civ. 5927 (NRB)

**DEFENDANT BRYAN CAVE LLP'S MEMORANDUM IN RESPONSE TO PLAINTIFF
PELICAN EQUITY, LLC'S JUNE 10, 2010 SUBMISSION REGARDING STANDING**

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Moses Silverman
Samuel E. Bonderoff

1285 Avenue of the Americas
New York, NY  10019-6064
Tel.  (212) 373-3000
Fax  (212) 757-3990

*Attorneys for Defendant Bryan Cave LLP*

July 1, 2010

Pursuant to this Court's May 20, 2010 Order, Defendant Bryan Cave LLP submits this memorandum in response to Plaintiff Pelican Equity, LLC's June 10, 2010 Submission regarding its standing (the "Plaintiff's Submission").

## I. PRELIMINARY STATEMENT

At the May 20, 2010 hearing, the Court expressed its concern about whether Plaintiff has standing to assert claims that were purportedly assigned to it by American Institutional Partners LLC ("AIP"). The Court observed that "this whole deal stank from the beginning" (May 20 tr. 4:3-4) and spelled out the suspicious chronology leading to the assignment:

> Here are the historic facts. Pelican was formed on March 27, the assignment occurs on April 6, and the bankruptcy filing is on May 27. Those are not attractive facts.

(*Id.* 11:18-21.) The Court put a simple question to Plaintiff's counsel:

> Did you get your right to sue in a proper way? Because if this assignment [is] void as a matter of law you have no standing.

(*Id.* 7:17-19.) At the conclusion of the hearing, the Court asked the parties to make written submissions in response to the questions the Court posed. (*Id.* 44:19-23.)

Plaintiff has not answered the Court's question. Plaintiff has not explained the relationship between the assignor (AIP) and the assignee (Plaintiff) or offered any evidence of how the assignment even came about. Instead, Plaintiff has focused only on the narrow issue of why it believes the assignment was not a voidable preference. In other words, Plaintiff has not demonstrated that it has "the right to sue in a proper way."

In response to the Court's questions, we have reviewed facts available on the public record. They demonstrate that Plaintiff did not obtain the assignment properly. The assignment is therefore void and Plaintiff has no standing to bring this lawsuit.

**First**, the April 6, 2009 Assignment Agreement (the "Assignment Agreement") violates a Utah state court order and is thus void as a matter of law. On November 24, 2008, Fairstar Resources Ltd. ("Fairstar") obtained a $2.3 million judgment against AIP in a Utah state court action. When Fairstar sought to enforce that judgment, the Utah court on February 17, 2009 ordered Mark Robbins and AIP to appear for an examination and ordered that AIP "may not dispose of any non-exempt property owned by them pending this examination." AIP's principal, Mark Robbins, failed to appear for that examination – even after a bench warrant was issued for his arrest – until April 30, 2010. Thus, the assignment of AIP's claims on April 6, 2009 was prohibited by the February 17, 2009 Order and constitutes an illegal and unenforceable contract.

**Second**, the Assignment Agreement is a champertous sale of litigation claims in violation of New York Judiciary Law § 489(1) and is therefore void as a matter of law. The purpose of the assignment appears to have been for Plaintiff to obtain AIP's legal claims. While the Assignment Agreement mentions the transfer of AIP's intellectual property, there is no evidence in the public record that Plaintiff has done anything to make use of that property or to engage in AIP's business. Plaintiff has no website, and there are no public documents reflecting the conduct of any business at all by Plaintiff. The only record we could find is a notice on the website of the Delaware Secretary of State that Plaintiff is no longer in good standing because it failed to pay $456.75 in taxes.

## II.     The Facts

### A.     The Utah Court Order

On November 24, 2008, Fairstar obtained a judgment against AIP, AIP Lending and Mark Robbins in the amount of $2,296,651.38 in *Fairstar Resources Ltd and Goldlaw Pty Ltd v. American Institutional Partners, LLC; AIP Lending, LLC; and Mark Robbins*, Civil No.

2

080916464 (the "Fairstar Proceeding") (Declaration of Samuel Bonderoff dated July 1, 2010, "Bonderoff Decl " Ex A, at p 1 ) In connection with Fairstar's effort to enforce its judgment, on February 17, 2009, the Utah District Court for Salt Lake County, Third Judicial District, entered an Order directing AIP to appear in court on March 3, 2009 "to answer concerning their property and provide documentation as requested in Plaintiffs' Motion and Order in Supplemental Proceedings " (Bonderoff Decl Ex B, at p 3 ) The order states "**IT IS FURTHER ORDERED** that Defendants may not dispose of any non-exempt property owned by them pending this examination " (*Id* )[1] The February 17, 2009 Order states that a failure to appear for the examination may constitute a "contempt of court" that could result in the issuance of "an arrest warrant" or the imposition of "appropriate sanctions " (*Id )*

AIP and Mark Robbins nevertheless failed to appear for that examination and a warrant was issued for Mark Robbins's arrest (Bonderoff Decl , Ex C at p 16 ) Fairstar was not able to have its court-ordered examination until Mark Robbins agreed to come to Utah for a deposition more than a year later – on April 30, 2010 (*See* Bonderoff Decl , Ex D )

The Assignment Agreement was executed April 6, 2009, in violation of the February 17, 2009 Order's prohibition of disposing of property (Plaintiff's Submission, Ex A )

**B.      The Relationship Between Plaintiff and AIP**

Although given an opportunity to do so, Plaintiff has not offered any evidence of, or explanation as to, its relationship with AIP  To the contrary, both at the hearing and in its submission, Plaintiff has obfuscated or altogether avoided the issue

We know from the files of the AIP bankruptcy that Plaintiff and AIP are related by ownership and that Plaintiff's counsel in this action is also counsel for Mark Robbins, who is

---

[1]    None of the property transferred pursuant to the Assignment Agreement qualifies as "exempt property" under Utah's execution statute  *See generally* U C A  1953 § 78B-5-505

identified in the Amended Complaint as AIP's founder and principal (Amended Complaint ¶¶ 1, 9). These records show the following:

      1.     The Statement of Financial Affairs, dated June 30, 2009 and signed by Mark Robbins as AIP's manager, states that Pelican Equity, LLC has "Limited common ownership/management" with AIP. (Bonderoff Decl. Ex. E, at 4.)

      2.     The Summary of Schedules, dated June 30, 2009 and signed by Mark Robbins as AIP's Manager, contains a list of "Co-Debtors" in Schedule H that lists both Mark Robbins and his wife Allison Robbins. The addresses for both Mark and Allison Robbins are listed as follows:

> Mark Robbins
> c/o Steven Altman
> 260 Madison Avenue, 22nd Floor
> New York, NY 10016
>
> Allison Robbins
> c/o Steven Altman
> 260 Madison Avenue, 22nd Floor
> New York, NY 10016

(Bonderoff Decl. Ex. F, at 17.)

      3.     Mark Robbins did not attend the Creditors' Hearing in the AIP bankruptcy pursuant to Section 341 of the Bankruptcy Code (the "341 Hearing"). AIP's representative at the hearing, Paul Benson, testified that he was asked to attend the hearing on behalf of AIP by Mr. Robbins's attorney, Steve Altman. (Bonderoff Decl. Ex. G, at p. 43.)

It is thus clear that AIP and Plaintiff have common ownership and that Plaintiff's counsel in this lawsuit, Steven Altman, is also counsel for Mark Robbins and AIP.

Plaintiff's counsel was confronted with these facts at the May 20, 2010 hearing. In his answers at the hearing and in Plaintiff's Submission, counsel has either failed to address the facts or has given explanations that may charitably be called misleading.  Thus:

      1.      Counsel has not denied or responded in any way to the admission in the Statement of Affairs that AIP and Plaintiff have common ownership.

      Instead, Plaintiff's Submission says that consideration for the Assignment Agreement was "provided by a Pelican affiliate, completely unrelated to AIP" (at 2) and that it "was the result of a legitimate and perfectly legal and appropriate business transaction with a third party, which had and has no affiliation with AIP" (at 6).  While these statements are (perhaps intentionally) not models of clarity, they appear to say that the party providing the consideration – identified in the Assignment Agreement as "DPR Management, LLC" (Plaintiff's Submission, Ex. A, at 1) – is not related to AIP.  Plaintiff's Submission creates the impression that AIP is not related to Plaintiff, but it does not say that.  In all events, any claim by Plaintiff that it is not related to AIP is not supported by any evidence and is contradicted by the only evidence before the Court:  the Statement of Affairs that AIP filed in the bankruptcy proceeding.

      2.      Plaintiff's counsel has not denied representing Mark Robbins.  Rather, he has said is that he did not represent *Allison* Robbins, and that he sent a letter to Fairfax's counsel on November 9, 2009 saying that he did not represent Ms. Robbins.  (Plaintiff's Submission at 6 n. 2 & Ex. C; May 20 tr.at 20.)  While he claims to have "no idea why my name is listed on behalf of Allison

Robbins," (May 20 tr. at 20), he elides the fact that he represented Mark Robbins

- the obvious explanation for why his name is listed.

> 3.      He has not denied that Mark Robbins asked him to ask Paul

Benson to appear on behalf of AIP at the 341 Hearing.  Instead, he has carefully

denied only that he not was the person who pulled Mr. Benson off the golf course.

This was the colloquy at the May 20 Hearing (May 20 tr. at 19):

> MR. ALTMAN:   If I can just respond to the personal
> stuff, because it is very significant to me.
>
> THE COURT:   Yes.
>
> MR. ALTMAN:   I take it very seriously.  I met Mr.
> Benson once.  What possible basis he had for that statement I have
> no idea.  I claim no participation whatsoever.  I represent to the
> Court as a matter of Rule 11 and otherwise as an officer of the
> Court - -
>
> THE COURT:   You were not the person [who] took him
> off the golf course.
>
> MR. ALTMAN:   Absolutely not.

But Mr. Benson's testimony at the 341 Hearing was not that Mr. Altman pulled him off the golf

course.  Rather Mr. Benson testified that Mr. Altman "first" asked him to testify "and then I met

this gentleman this morning.  He pulled me off the golf course." (Bonderoff Decl. Ex. G at p.

43.)[2]  It is apparent from this testimony that Mr. Benson was talking about two different lawyers.

---

[2]   The full text of the relevant testimony is as follows:

> MR. MORGAN:      Okay.
>
> Did Mr. Robbins ask you to come to this meeting?
>
> THE WITNESS:      Mr. Robbins' attorneys did.  I have not
> spoken to Mr. Robbins about it. . . .

Mr. Altman contacted him "first" to ask him to appear at the hearing.  Mr. Benson then met the

gentleman who pulled him off the golf course.  That gentleman seems to be Scott Blotter, who

appeared at the 341 hearing as AIP's counsel.  (Bonderoff Decl. Ex.G, at p. 2.)  Mr. Altman was

not present.  (*Id.*)

Mr. Altman apparently realized that Mr. Benson was saying as much.

Accordingly, Plaintiff's Submission says (at 6, n.2) that, "the statement by counsel for the Talos

Defendants that Paul Benson testified at the AIP 341 hearing that the undersigned pulled him off

the golf course mis-states the testimony.  Mr. Benson said no such thing."  Mr. Altman is correct;

Mr. Benson did not say that Mr. Altman pulled him off the golf course.  But Mr. Benson did say

he was asked to testify on behalf of AIP by Mr. Robbins's lawyer, Steve Altman.  This fact Mr.

Altman has not denied.

## III.   DISCUSSION

### A.   Plaintiff Lacks Standing to Bring Its Claims Because the Assignment Agreement That Conferred Standing Is Void as a Matter of Law

While the assignee of claims may have standing, *see Connecticut v. Physicians*

*Health Servs. of Conn., Inc.*, 287 F.3d 110, 117 (2d Cir. 2002), if the assignment itself is not

valid, the purported assignee does not have standing and its case should be dismissed under Fed

R. Civ. P. 12(b)(1).  *See Bernstein v. Greater N.Y. Mut. Ins. Co.*, 706 F. Supp. 287, 290

(S.D.N.Y. 1989) (holding that plaintiff lacked standing because assignment of underlying claim

---

> MR. MORGAN:      When you said Mr. Robbins' attorneys
> asked you, who is that?
>
> THE WITNESS:      Well, **that was Steve Altman first**, and then
> I met this gentleman this morning.  He pulled me off the golf
> course.

(Bonderoff Decl., Ex. G (AIP 341 Tr.) 43:2-21 (bold added).)

was void); *McCormack* v. *Bloomfield Steamship Co.*, 399 F. Supp. 488, 491 (S.D.N.Y. 1974)

(same).  Here, the Assignment Agreement is void because it violates a court order and because it

is champertous.  Plaintiff therefore lacks standing to bring this lawsuit. [3]

     1.     <u>The Assignment Agreement Is Void Because It Violates a Court Order</u>

The April 6, 2009 Assignment Agreement was a violation of the Utah court's

February 17, 2010 order and was a contempt of court.  It is therefore illegal and unenforceable.

*See Stone* v. *Freeman*, 298 N.Y. 268, 271 (1948) ("It is the settled law of [New York] that a

party to an illegal contract cannot . . . plead or prove in any court a case in which he, as a basis

for his claim, must show forth his illegal purpose"); *see also Szerdahelyi* v. *Harris*, 67 N.Y.2d

42, 48 (1986) ("illegal contracts, or those contrary to public policy, are unenforceable and ... the

courts will not recognize rights arising from them"); *cf. Walters* v. *Fullwood*, 675 F. Supp. 155,

161 (S.D.N.Y. 1987) ("It is well settled that a court should not enforce rights that arise under an

illegal contract").

The Assignment Agreement is unenforceable for the additional reason that it

violated an injunction that is binding on Plaintiff.  Although Plaintiff was not a party to the

action in which the court order was issued, it is bound by the order under Utah law, which

provides that an order restraining action is binding on "those persons in active concert or

participation with [the parties to the action, their officers, agents, servants, employees, and

---

[3]    Bryan Cave has standing to challenge the legality of the Assignment Agreement. *See*
    *Sardanis* v. *Sumitomo Corp.*, 282 A.D.2d 322, 323 (1st Dep't 2001) ("While defendants may
    not inquire into the consideration paid, the purpose of the assignment, the use to be made of
    any proceeds collected, they may contest the legality of the making and delivery of the
    assignment in arguing that a plaintiff is not a real party in interest") (internal citations,
    quotation marks and brackets omitted).  Plaintiff's argument that Bryan Cave does not have
    standing to challenge a voidable preference (Plaintiff's Submission, at 2-4) is irrelevant to the
    question of whether Bryan Cave has standing to challenge an illegal and champertous
    assignment that violates a court order.

attorneys] who receive notice, in person or through counsel, or otherwise of the order." Utah

Rules of Civil Procedure § 65A(d).  The common ownership of Plaintiff and AIP, as well as the

fact that Plaintiff's counsel is Mark Robbins's counsel, establishes Plaintiff's connection to the

order.  *See European American Bank* v. *Royal Aloha Vacation Club*, 704 F. Supp. 1233, 1245

(S.D.N.Y. 1989) (assignment void because it violated injunction in an action in which the

assignee was not a party because of affiliation with assignor and constructive notice).

2.     The Assignment Agreement Is Void
       Because the Assignment of AIP's Claims Is Champertous

Section 489(1) of New York's Judiciary Law provides that "no corporation or

association, directly or indirectly . . . shall solicit, buy or take an assignment of . . . any claim or

demand, with the intent and for the purpose of bringing an action thereon."  The New York

Court of Appeals has further held:

> We conclude that in order to constitute champertous conduct in the
> acquisition of rights that would then be nullified and to resolve the
> question at issue, the foundational intent to sue on that claim must
> **at least have been the primary purpose for, if not the sole
> motivation behind,** entering into the transaction. . . .  The bottom
> line is that Judiciary Law § 489 requires the acquisition be made
> with the intent and for *the* purpose (as contrasted to *a* purpose) of
> bringing an action or proceeding . . . .

*Bluebird Partners, L.P.* v. *First Fidelity Bank, N.A.*, 94 N.Y.2d 726, 736 (2000) (bold added).

The statute is applicable to assignments to limited liability companies like Plaintiff.  *See Semi-*

*Tech Litig., LLC* v. *Bankers Trust Co.*, 12 F. Supp. 2d 319, 330-31 (S.D.N.Y. 2003); *Commercial*

*Cap. Co., LLC* v. *Becker Real Estate Servs., Inc.*, 24 Misc. 3d 912, 918 (N.Y. Sup. Ct. 2009).

According to all public record evidence, Plaintiff has done nothing with the

assignment it received from AIP other than bringing this lawsuit.  There does not appear to be

any evidence that Plaintiff is taking, or has taken, any action to use the intellectual property that

was part of the assignment or to engage in AIP's business in any way.  (*See* Plaintiff's

9

Submission, Ex. A. at ¶ 1(a).)  Plaintiff has no website.  A search of the Internet and Lexis-Nexis

news databases reveals no activity by Pelican Equity, LLC or any agent, affiliate or person

purporting to act in its name.  (Bonderoff Decl. ¶ 10.)  The only evidence of Plaintiff's existence

that we could find in our research was a notice on the website of the Delaware Secretary of State

that Plaintiff ceased to be in good standing as of June 1, 2010, for failure to pay a tax liability of

$465.75.  (Bonderoff Decl., Ex. H.)  Plaintiff is evidently not engaged in business at all.

Thus, it is clear that the purpose of the Assignment Agreement - the primary and

possibly the exclusive purpose – was the assignment of the claims brought in this action.  The

Assignment Agreement is therefore void under Judiciary Law § 489(1), and plaintiff's claims

should be dismissed.  *See Refac Int'l, Ltd.* v. *Lotus Dev. Corp.*, 131 F.R.D. 56, 58 (S.D.N.Y.

1990) (where assignment was for the primary purpose of bringing claims, case was dismissed as

champertous as a matter of law).

**B.      This Court Is Authorized To Dismiss Plaintiff's Claims in their Entirety**

"A litigant may raise a court's lack of subject matter jurisdiction at any time."

*Kontrick* v. *Ryan*, 540 U.S. 443, 455 (2004).  Here, plaintiff's lack of Article III standing

deprives this Court of the jurisdiction to hear this case.  *See Lujan* v. *Defenders of Wildlife*, 504

U.S. 555, 560-61 (subject matter jurisdiction only established if plaintiff has Article III

standing).  In determining that plaintiff lacks Article III standing, this Court may take judicial

notice of the public-record evidence set forth in the Bonderoff Declaration.  *See Niagra Mohawk*

*Power Corp.* v. *Chevron U.S.A., Inc.*, 596 F.3d 112, 124 (2d Cir. 2010) (noting court's inherent

power to take judicial notice of documents in the public record).  Thus, this Court is free to

dismiss plaintiff's claims based on the record now before it.

Should the Court require further evidence, however, it is also empowered to

"conduct an evidentiary hearing ... where a jurisdictional issue such as standing is at stake." *In*

*re Bennett Funding Group, Inc.*, 336 F.3d 94, 102 (2d Cir. 2003). At such a hearing, plaintiff should be bound to prove "by a preponderance of the evidence that [subject matter jurisdiction] exists." *Luckett* v. *Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002).

## IV.   CONCLUSION

For the reasons set forth above, this Court should dismiss Plaintiff Pelican Equity, LLC's claims in their entirety for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1).

Dated: July 1, 2010
New York, NY

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: _____/s/ Moses Silverman_____

Moses Silverman
Samuel E. Bonderoff

1285 Avenue of the Americas
New York, NY  10019-6064
Tel.  (212) 373-3000
Fax  (212) 757-3990
msilverman@paulweiss.com

*Attorneys for Defendant Bryan Cave LLP*

11