UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PELICAN EQUITY, LLC,

                Plaintiff,

- against -

ROBERT V. BRAZELL, STEPHEN L. NORRIS,
TALOS PARTNERS, LLC,
RAMA RAMACHANDRAN, DARL McBRIDE,
and BRYAN CAVE LLP,

                Defendants.

09 CIV 5927 (NRB)
ECF Case

**MEMORANDUM OF DEFENDANTS ROBERT V. BRAZELL, STEPHEN L.
NORRIS, TALOS PARTNERS, LLC, AND RAMA RAMACHANDRAN
IN RESPONSE TO PLAINTIFF'S JUNE 10, 2010
SUBMISSION REGARDING STANDING**

MEISTER SEELIG & FEIN LLP

Two Grand Central Tower
140 East 45th Street, 19th Floor
New York, New York 10017
Tel.   (212) 655-3500
Fax:   (646) 539-3626

*Attorneys for Defendants Robert V. Brazell,
Stephen L. Norris, Talos Partners, LLC, and
Rama Ramachandran*

Pursuant to this Court's May 20, 2010 Order, Defendants Robert V. Brazell, Stephen L. Norris, Talos Partners, LLC and Rama Ramachandran (together, "Talos Defendants") submit this memorandum in response to the June 10, 2010 submission of Plaintiff Pelican Equity, LLC ("Pelican") regarding standing ("Plaintiff's Submission").

At the May 20, 2010 oral argument, the Court questioned Plaintiff's standing to assert claims allegedly assigned to it by American Institutional Partners, LLC ("AIP"), Mark Robbins ("Robbins"), and other related parties. More than once Mr. Altman, counsel for Plaintiff, asked the Court for an opportunity to fully brief this subject and the Court invited him to do so. However, rather than address the question presented by the Court or to even provide any information concerning Pelican, Plaintiff instead argues that the Defendants do not have standing to allege a fraudulent conveyance or voidable preference. Having left the Court and the parties with no more information than they had at the oral argument, the Talos Defendants will attempt to fill at least some of the void from information they have been able to gather primarily from publicly available records.

## I. <u>WHAT IS THAT SMELL?</u>

Without any information from Pelican or any discovery, much remains unknown, but the little that is known gives rise to a foul odor which we submit is a direct result of Pelican's shady, if not outright fraudulent, conduct. Here is what we know so far.

### *The Fairstar Judgment*

The only known purported stock loan that AIP had in fact been involved in was with Fairstar Resources Ltd. ("Fairstar') and resulted in Fairstar bringing a lawsuit in Utah's Third Judicial District Court in Salt Lake County against Mark Robbins, AIP and AIP Lending, LLC

("AIP Lending") based on, among other things, fraud and misrepresentation.[1] The lawsuit resulted in a November 24, 2008 entry of a final judgment against Robbins, AIP and AIP Lending in the amount of $2,296,651.38 (the "Fairstar Judgment"). Exh. A.[2]

After more than 20 different attempts to serve Robbins with bench warrants and writs of execution, on February 17, 2009 Fairstar obtained a Court order that, among other things, specifically ordered that "[n]either Defendants nor any persons acting in conjunction with them or on their behalf **shall transfer, dispose of, or interfere with any of the properties** described on the post-judgment writs or orders served by Plaintiffs on Defendants in this case." Exh. J. On that same day Judge Peuler signed an Order requiring AIP to appear and produce any and all documentation related to any and all of its assets. That Order also specifically ordered Robbins, AIP and AIP Lending to **"not dispose of any non-exempt property owned by them pending this examination."** ("Peuler Order"). Exh. B.

On February 19, 2009 Judge Peuler signed a Charging Order against AIP, **ordering that Defendants' interest in AIP shall be foreclosed upon** and sold at auction to satisfy the judgment, authorizing the constable to sell Defendants' interests in AIP, and ordering that **all distributions of monies or other compensation or payment that are due or may be issued to Defendants shall be paid instead to Plaintiffs**. Exh. K.

Fairstar scheduled constable's sales of certain assets of Robbins, AIP and AIP Lending for April 6, 2009 and April 8, 2009 (the "Scheduled Fairstar Sales"). Exh. I. Seeking to avoid

---

[1] *Fairstar Resources Ltd. and Goldlaw Pty Ltd. v. American Institutional Partners, LLC; AIP Lending, LLC; and Robbins,* Civil No. 080916464, before Judge Peuler in the Third Judicial District Court in and For Salt Lake County.

[2] All exhibits cited are attached to the Declarations of Samuel E. Bonderoff (Dkt. #54) and James M. Ringer. Exhibits A-H are attached to the Bonderoff Declaration and Exhibits I-Q are attached to the Ringer Declaration.

2

the Scheduled Fairstar Sales, Robbins, AIP and AIP Lending entered into a standstill agreement, effective April 6, 2009, with Fairstar whereby Fairstar would be paid $350,000 to suspend for 30 days its collection on the Fairstar Judgment.

### *Where did Robbins get the Money to pay Fairstar? (and Who is Pelican?)*

Pelican was formed on March 27, 2009. Exh. H. Mark Robbins's friend[3] Doug Roberts is the Manager of Pelican.[4] Exh. I. In the Spring of 2009 Robbins was living in Newport Beach, California at Pelican Hills Resort in a $2,000 a night Villa. Robbins testified in his deposition in the *Fairstar* case that his friend Doug Roberts rented the Villa for him. Exh. D at 96:1-23. In the July 2, 2009 AIP bankruptcy hearing, Paul Benson, sitting in for Robbins who did not attend due to his arrest warrant, testified that the Villa was paid for by Pelican. Exh. G at 29:22-32:4. Mr. Benson testified that he believes that there are several people involved in Pelican, explaining "I'm not part of the stock lending business, so I don't honestly know who is a partner, who is an investor, who is specifically involved. But I know that when I went down there, for example, there was a large group of about a dozen attorneys and about a dozen other people in many villas. So it's not specific to Mark Robbins, it's pretty much this group has almost the entire resort." Exh. G at 31:3-13. He identified Pelican as "the company that is slowly taking over anything Mark [Robbins] had and [that] will be paying off the creditors." Exh. G at 23:23-24:1.

Mr. Benson testified that Robbins previously owed money to Pelican, Exh. G at 29:22-32:4, and in oral argument Mr. Altman likewise said that Pelican is a "creditor of various entities

---

[3]  This is how Robbins described his relationship with Roberts in his deposition in the *Fairstar* case. Exh. D at 96:21-23.

[4]  At oral argument Mr. Altman stated that Doug Roberts owns a membership interest in Pelican through Doug Roberts's entity (Tr. 18:22-19:3), but Mr. Altman did not identify the entity or explain why his signature on the assignment as manager of Pelican is as an individual rather than on behalf of some other entity.

3

in and around Robbins." Tr. 6:22-24. Because Pelican had just been created a few weeks before AIP filed for bankruptcy, it seems odd that it was somehow a creditor of AIP unless it had acquired some pre-existing obligation to some other party. But then again, Mr. Altman has now changed his story, stating in Plaintiff's Submission that "Pelican is not and never was a creditor of AIP." Plaintiff's Submission at pg. 4.

Days after its formation, Pelican, Mark Robbins, AIP, and other related entities entered into the Assignment Agreement, whereby Robbins and AIP assigned Pelican their interests in their "Stock Lending Business" and rights to the "Talos Claims," *i.e.,* the claims made in this litigation. In exchange, Pelican was "willing to arrange for DPR Management, LLC ("DPR") to make a $375,000 loan, to be guaranteed by (among others) Robbins, AIP, and AIP Lending, the net proceeds of which (in the amount of $350,000) would be paid to Fairstar on behalf of Robbins, AIP and AIP Lending in order" to obtain a 30 day forbearance on collection efforts. The Assignment Agreement is dated April 6, 2009, the day of the first scheduled Fairstar Sale, Exh. I, which is also the day the purported lender DPR was formed. Not only is Robbins's friend Doug Roberts Manager of Pelican, but he is also Principal of DPR. Tr. 18:1-3; Exhs. N and I.

While the Assignment to Pelican was made subject to certain liens, including the Fairstar Judgment and a DPR Lien for the loan, counsel for Fairstar informed us that Fairstar was unaware of the Assignment to Pelican. Indeed, it apparently wasn't until the April 30, 2010

deposition of Mark Robbins—an entire year after the standstill agreement—that Fairstar actually learned of the assignment.[5] Exh. D at 191:5-193:22.

In oral argument Mr. Altman stated that the assignment was an arms-length transaction and that Doug Roberts has no relation with Mark Robbins or AIP. Tr. 4:7-8; 18:17-18. However, in its bankruptcy filings, AIP describes its relationship with Pelican as "limited common

---

[5] Q. Are you familiar with an entity known as Pelican Equity, LLC?
A. I am.
Q. How are you familiar with that entity?
A. I helped with a transaction with it.
. . .
A. That's when I helped set up that transaction to get you guys $350,000.
. . .
Q. Well, I don't think we got any money from Pelican Equity, LLC. So help me understand better what you're talking about there.
A. When that—I mean this is all public knowledge. When that payment was made to you guys for $350,000, the owners of Pelican, that's when that — that's what the consideration for—when I transferred some of the stock rights to Pelican, it was in consideration for $350,000 that I gave Fairstar.
Q. Well, did you have an ownership interest at that time?
A. In Pelican?
Q. Yes.
A. No.
Q. Well, what was it you were selling, then, for $350,000?
A. Some of the IP rights in AIP.
Q. Okay. Did you sell them to Pelican Equity, LLC?
A. Yes.
Q. What were the IP rights that you sold to Pelican?
A. Some of the stock lending data and stuff like that.
Q. Did you have some kind of a program that you sold them?
A. No.
Q. What was the data that you sold them?
A. Research and just different personal IP knowledge.
Q. Who was the principal in Pelican Equity, LLC that you dealt with?
A. Doug Roberts.

ownership/management." Exh. E at pg. 4. Robbins has testified that he is AIP.[6] In addition, Doug Roberts (as an individual) is identified by AIP as one of its contingent creditors. Exh. Q. So, Doug Roberts has an interest in Pelican, which has some type of limited common ownership relationship with AIP, which is apparently one and the same with Robbins. The aroma only gets stronger.

While AIP states in one place in its bankruptcy filing that there is no relationship between AIP and DPR, Exh. E at pg. 4 it also states that it has an executory contract with DPR, described as "Combination Agreement dated April 6, 2009 interest of Debtor [*ie*, AIP] under Contract is contingent upon right to receive certain membership interests in DPR Holdings, LLC." Exh. F at pg. 16. It would certainly be interesting to see this agreement.

### *The AIP Bankruptcy*

AIP filed for bankruptcy on May 27, 2009, just three weeks after the expiration of the standstill agreement with Fairstar. Robbins did not appear at the July 2, 2009 bankruptcy hearing and the petition was ultimately dismissed.

Fairstar has continued to aggressively collect on the Fairstar Judgment and there have been several constable sales. In a May 18, 2010 notice of constable sale, Pelican and several AIP entities were listed as property to be auctioned off, including all rights and interest of Mark Robbins to any entity formed in conjunction with Pelican, and all interest of Robbins, AIP and AIP Lending to receive payments pursuant to any contracts or agreements with Pelican. Exh. M.

---

[6] AIP is 100% owned by Seven Investments, LLC, which at the time was owned by Mark Robbins and his wife Alison Robbins. However, in his deposition in the *Fairstar* case, having difficulty explaining the transfer of money among his various entities, he explained "I mean, one of the problems is I was AIP. I mean, I owned it. So there was – I should have defined a lot better in business what was AIP and what was personal. Q. You kind of just treated them as one and the same? A. Yes. Exh. D at 54:20-55:1.

6

On June 29, 2009, just one month after AIP filed for bankruptcy, Pelican brought this present action.

Today, neither Pelican nor DPR are in good standing with their respective States. Pelican has failed to pay taxes and is not in good standing with the Delaware Department of State. DPR has failed to file a license renewal and is not in good standing with the Utah Department of Commerce. Exhs. H and N.

## II.   RAMACHANDRAN IS A CREDITOR

Rather than answer the Court's question as to whether Pelican obtained its right to sue in a proper way, Mr. Altman attempts to turn the tables and instead argues that the Defendants have no standing to raise the claim of fraudulent conveyance or voidable preference because they are not creditors of the transferors. While irrelevant, the facts are to the contrary. As Mr. Altman has to have known, Defendants Ramachandran and McBride *are* creditors.[7] Incredibly, Mr. Altman claims that neither filed proofs of claim. The fact is the opposite, and easily ascertainable by checking the court's publicly available online records. Ramachandran is listed in AIP's bankruptcy schedules as a creditor holding both unsecured priority claims and unsecured non-priority claims, Exh. F at pgs. 10 and 14, and he is on the list of creditors holding the 20 largest unsecured claims, Exh. Q. Both filed proofs of claim. Exhs. P and R. While Mr. Altman attempts to dismiss Mr. Ramachandran as a "very minor creditor," (Plaintiff's Submission at pg. 4) the fact is that his claim is in the amount of $416,148.28, an amount larger than the $350,000 that Mr. Altman considered to be a significant amount of money when it was being paid to Fairstar. Tr. 10:12-15 ("Fairstar was a creditor breathing down AIP's back, and

---

[7]   Both defendants filed claims in the AIP Bankruptcy, a fact that is available to anyone who bothers to check the online court records, and Ramachandran is listed by AIP as one of its 20 largest creditors. Exhs. P, Q and R.

7

Fairstar was paid a significant chunk of money, several hundred thousand dollars, in order to buy some time").[8]

### III. PELICAN HAS NO STANDING

Pelican has no standing for at least three separate reasons.

**A. The Assignment Violated Court Orders**

Court Orders were entered in the *Fairstar* litigation prohibiting the transfer of any assets by AIP, AIP Lending, LLC and Mark Robbins. As discussed above, the February 17, 2009 Peuler Order specifically ordered that AIP, AIP Lending and Robbins "may not dispose of any non-exempt property owned by them pending this examination." Exh. B. Thus the Order froze all of AIP's assets until Robbins appeared to testify, which he did not do until his April 30, 2010 deposition.

AIP was enjoined from entering into the Assignment Agreement and the assignment therefore constitutes a transfer in violation of an injunction. The injunction was a public record and Pelican is bound by it. The assignment in violation of the order is invalid and Pelican therefore has no standing to bring this litigation. *See European American Bank v. Royal Aloha Vacation Club,* 704 F.Supp. 1233, 1245 (S.D.N.Y. 1989).

While the group at the Pelican Hills Resort gathering may have thought they were being wily in how they structured these transactions, they cannot avoid the Utah Orders. It is of no matter that the assignment was made subject to the "identified lien" of the Fairstar Judgment: the Order specifically enjoined <u>any</u> transfer.

---

[8] Incredibly, Mr. Altman states in his submission that if Ramachandran came forward with proof that he is a creditor of AIP, Pelican "could of course" dismiss him and end the inquiry entirely. Plaintiff's Submission at pg. 4. The very fact that he would suggest that Pelican could avoid the consequences of its perfidy by now dismissing a defendant further demonstrates the total duplicity of the entire scheme.

8

While Fairstar has not chosen to seek to intervene or otherwise seek to set aside the transfer, we submit most likely because it knows that the claims asserted by Pelican are of no value, this does not change the fact that the assignment was void. Pelican should not be permitted to escape the consequences of its acts and somehow isolate itself from the conduct of AIP and Robbins.[9]

### B. The Assignment Is a Fraudulent Conveyance

The assignment was made with intent to defraud creditors. As discussed above, just weeks before AIP filed for bankruptcy, Pelican and DPR were created and AIP's alleged stock loan business and the so called Talos litigation claims were assigned to Pelican. However, AIP was enjoined from such a transfer and it was concealed from its creditors, including Fairstar.

AIP's intent to defraud its creditors can be inferred from circumstantial evidence (often referred to as "badges of fraud"), such as the inadequacy of consideration received, the close relationship between the parties to the transfer, information that the transferor was insolvent by the conveyance, suspicious timing of transactions or existence of pattern after the debt had been incurred or a legal action against the debtor had been threatened, or the use of fictitious parties. *See A.J. Heel Stone, LLC v. Evisu Intl, S.R.L.,* 2006 WL 1458292 at *3 (S.D.N.Y. 2006).

Such evidence is present here. The assets here were conveyed in exchange for Pelican being "willing to arrange" an alleged loan of $375,000 (but with net proceeds of only $350,000) by DPR Management, LLC, an entity created the same day as the alleged loan, by Douglas

---

[9] That AIP, Robbins and Pelican are inextricably intertwined is evident from the fact that in paragraph 3 of the Assignment AIP and Robbins agreed to assist Pelican in the "pursuit" of the "Talos claims" <u>at their own expense.</u> Exh. I. Indeed, Pelican could hardly expect to prosecute this case without the active involvement and testimony of Robbins who, in his own words, is AIP.

Roberts, the manager of Pelican.[10] While the bona fides of this loan are questionable,[11] what is clear is that Pelican itself provided nothing. Moreover, AIP described Pelican in its bankruptcy filing as having "limited common ownership/management" with AIP and that AIP has an executory "Combination Agreement" with DPR. Exhs. E at pg. 4 and F at pg. 16. Mr. Benson testified at the bankruptcy hearing that Pelican was a creditor of Robbins and Mr. Altman initially maintained to this Court that Pelican was a creditor of various entities around Robbins, but has now recanted. AIP had no income and no assets around the time of the assignment, Exh. E at pg. 1, and Pelican had been in existence only for nine days. The assignment happened suspiciously close in time to AIP filing for bankruptcy. The Assignment provided that DPR would pay the "net proceeds" of the loan to Fairstar directly rather than to the Assignors. Pelican and DPR did not exist before the transfer and are not in good standing now. Accordingly, by numerous indicia the assignment was a fraudulent conveyance under N.Y. Debt. & Cred. Law § 276.

Even without intent to defraud, the transfer is a fraudulent conveyance. Under N.Y. Cred. & Deb. Law §§ 273-275 (where intent is not an element), fraudulent conveyance is found where the conveyance was made without fair consideration and (1) the transferor is insolvent at the time of the conveyance or will be rendered insolvent by the transfer; (2) as a result of the transfer, the transferor is left with unreasonably small capital to conduct its business; and (3) as a

---

[10] In an e-mail to Fairstar's counsel two days before the assignment, Robbins's attorney described the person funding the $350,000 payment as Robbins's "business colleague." Exh. L.

[11] The Assignment states only that the loan is to be made by DPR management and is to be guaranteed by "(among others) Robbins, AIP and AIP lending." The borrower is not identified. Moreover, the fact that the principal of Pelican is also the person who created DPR on the same day as the assignment makes the entire transaction appear questionable and suggests that the structure was yet another device created to defraud creditors.

result of the transfer, the transferor intends or believes that it will incur debt beyond its ability to pay.[12] Here, the conveyance was made in exchange for the transferee being "willing to arrange" a loan by a third party, the transferor was insolvent, was not conducting business, and filed for bankruptcy within weeks of the transfer. Defendant Ramachandran is a creditor of AIP and clearly has standing to challenge the assignment.

### C. The Assignment is Champertous

The New York champerty statute is violated if "the foundational intent to sue on the claim was at least the primary purpose if not the sole motivation behind entering into the transaction." *See Semi-Tech Litigation, LLC v. Bankers Trust Company*, 272 F.Supp.2d 319, 331 (S.D.N.Y. 2003). An assignment made in violation of the statute is void and may not be sued upon. *Id.*

Here, it is clear that the transfer to Pelican was for the sole purpose of bringing a lawsuit to pursue AIP's claims. The transfer of the alleged, but non-existent "Stock Lending Business" in addition to the Talos claims could only have been done either to disguise the real purpose of the assignment or to somehow try to preserve for Pelican a claim for future business profits.

AIP was not a going concern when the assignment occurred. AIP had no income in 2009. Exhs. G at 8:5-8 and E at pg. 1. AIP had no employees and no office, Exh. G at 48:8-10, and Fairstar was hot on its tail, auctioning everything it could get its hands on. AIP didn't own any real property or other assets. Id. at 10:5-6. Whatever Pelican received by the assignment, it did not receive a going concern. At most it acquired some alleged, but unspecified intangible information and there is no evidence that it has ever even attempted to engage in business of any sort. Instead, all Pelican has done is to file the complaint in this action, which it did just weeks

---

[12]     To the extent that this issue might be governed by Utah law, it tracks New York law. *National Loan Investors, L.P. v. Givens*, 952 P.2d 1067 (Utah, 1998)

11

after AIP filed for bankruptcy. Pelican has now been in existence for just over a year and has already fallen out of good standing with the Delaware Secretary of State, which further demonstrates that Pelican took the assignment of the claims solely for purpose of litigation. Accordingly, the assignment is void under N.Y. Judiciary Law §489.

## IV. CONCLUSION

The source and identity of the smell, indeed the stench is the fraudulent and duplicitous conduct of Pelican, Robbins and AIP. For the reasons set forth above, this action should be dismissed in its entirety for lack of standing. In the absence of a dismissal, we respectfully submit that the Court hold an evidentiary hearing to resolve these issues, but only after affording the Defendants the opportunity to conduct discovery limited to the issues of the bona fides of Pelican and the Assignment.

Dated: July 1, 2010
New York, NY

MEISTER SEELIG & FEIN LLP

By: __/s/ James M. Ringer__
    James M. Ringer
    Jeanette Blair

Two Grand Central Tower
140 East 45th Street, 19th Floor
New York, New York 10017
Tel.  (212) 655-3500
Fax:  (646) 539-3626
jmr@msf-law.com
jrb@msf-law.com

*Attorneys for Defendants Robert V. Brazell, Stephen L. Norris, Talos Partners, LLC, and Rama Ramachandran*